Ma'am, would you call the case, please? Case number 12-3654, Stone Street Partners v. City of Chicago Department of Administrative Hearings All right, I'll ask the lawyers to state their names for the record, please. Good morning, Your Honors. Richard Linden, MDF of Stone Street Partners Thank you, Mr. Linden. And, sir? Jonathan Byer, on behalf of the City of Chicago Department of Administrative Hearings Okay, Mr. Byer, thank you very much.  Mr. Linden? Yes, Your Honor. Go forward, sir. Thank you. May it please the Court and all counsel, good morning. This is a case where the dollar value, I recognize it's not great, it's a $1,000 judgment, but I believe the issues in this case are way more important than just $1,000. What goes on, really, at 400 Superior is troublesome in many respects, from notice, in this case they destroyed the entire record, the city, in this case, I think the most important issue about this case is, I don't believe any dispute that the city was wrong in recording invalid judgment at the time. The administrative judgment in this case was entered all the way back in 1999. The city went ahead in 2009, almost ten years later, I think nine years plus, and they recorded a judgment they had back in 1999. When you say it was an invalid judgment, counsel? We claim it's invalid based on notice, but even if you accept and say the judgment was valid back in 1999, when we set the statute, I think it's a well-recognized law that judgments are only good for seven years, unless the party revives the judgment. In this case, there's no dispute that from 1999 all the way until 2012, the city did nothing to revive the judgment. That it was only in 2012 we filed the administrative review action, and I think the city recognized that they made a mistake, or I don't even call it a mistake, but I think that they just failed to follow the law. They have 20 years, don't they? Excuse me? 20 years? If they revive it, you have 20 years, which they did, but they filed that lien without reviving the judgment. The judgment was over seven years at the point they filed the judgment, and I believe that was back in March 19, 2009, and the judgment was entered July 24, 1999. All right. Mr. Lind, let me ask one more point on that. The administrative decision was in 1999, all right, and the statute provides that the administrative judgment is basically the equivalent of a court judgment, whatever that means. And believe me, I used to practice in this area, and I never figured out what it meant because we couldn't issue garnishment summonses. So the city of Chicago, like my old clients, came up with a system of going into court and getting them transformed into a real judgment that was enforceable. All right. And the city did that through an M1 case filed in 2004. Did your client get any notice of the 2004 M1 case? Because it's sort of akin to registering a foreign judgment, and if you register a foreign judgment, you have to serve with a summons, and you get a chance to come into court to say, this really isn't a judgment against me. There's some other reason why the Illinois court shouldn't recognize the foreign judgment. What did the city do to provide notice to your client in 2004 that, you know, or didn't they? Or did they just walk in and get everything represented and not notify anybody? That's a very good question. I'm not aware of them doing anything. I did check the half-sheet last night on the 2004 case. There's no indication that I could tell from the half-sheet that summons or anything was ever issued. Is that part of the record in this case? I don't believe it's a matter of, I think, public record. You check the clerk's website, which I did. But it's not what was before the court. No, the city presented no evidence that they provided notice. So I'd say that there's no evidence of the 2004. But if you look at the half-sheet or the computer, there's no indication of notice. And they apparently tried to serve my client, I think, with the 2012, and they tried to revive the judgment. My client didn't recall getting notice of that. This whole case is like a perfect storm of sewer procedure mishaps. Exactly. And you need to get all of them. You need to win every single one of them, I think, to get to the results you want. One of the points you're raising is that the original service of the administrative summons, the notice of the administrative hearing, was sent to the property rather than to the registered agent of the corporation, right? Correct. All right. And it did go to the property, and then we all know that someone showed up and Mr. Farrelly had a stroke. We know that side of the story. But why are you contending that service at the property address itself was invalid? For a number of reasons. I think the court could take notice that many properties, and probably the majority of commercial properties only, doesn't live there. That lease due process requires a minimum reasonable service and reasonably calculated based on the circumstances. Here we have set forth in the record, if you look up Stone Street, it's been registered with the Secretary of State since 1998, I believe. But this is a proceeding that is unique to the property, isn't it? I mean, it's a building code violation about the property. It's a judgment that would be entered against the property owner here at Stone Street, so I believe it's got to be reasonably calculated to reach Stone Street. But I think some guidance, and I'm not sure if we cited that in our brief, but the Chicago Municipal Code, Section 2-14078A, and it talks about the proper means of service by the city. And if it involves, I'm sorry, 214074C, and if it involves a business entity, it says, by first class or express mail by overnight carrier, get the violator's residence address, if it's an individual or if the violator is a business entity, at any address identified for its registered agent or at its principal place of business. And the principal place of business is not the property address. If you look at the Secretary of State's website, in the printout that we introduced in evidence, the principal place of business at Stone Street was 1343 North Wells. The registered agent was William DeLuga. I don't see any justifiable excuse why the city cannot, even at a minimal, look it up. I've had many cases of the city and they don't follow. Well, even taking all that as true, Counsel, that may be an issue or an error of some kind, aren't we buying here by the constraints of the Administrative Review Act as far as what your relief is that you can get here? In some respects, yes. I mean, what we're asking for is that the judgment back in 1999 is invalid based on improper notice of service and lack of jurisdiction. Right, but once a judgment is entered under the Administrative Review Act, what is the remedy? Typically, the remedy would be Administrative Review. But if you have a void judgment for lack of jurisdiction, the law is very clear that that could be collaterally attacked or attacked at any time. But you don't have to comply with Administrative Review then and take it to the circuit court within 35 days? Not if it's a lack of jurisdiction or a lack of notice. What's your best case on that, Counsel? I know we cite cases in our brief. I can look at my brief and get it. If it's a lack of jurisdiction, because if you take a situation where a legislative person never had notice at all, how would that person reasonably be expected to appeal within 35 days if he never had notice? But doesn't the Act say that that administrative hearing officer could only review it if it were a default judgment? It provides for review of a default judgment to vacate, correct? Right. There's also a code section, which I wrote down as 214-1088, says it's sort of the city's internal version of a motion to quash. And it says they can set aside any judgment due to lack of notice. And I think you did that. You tried it. And I'm asking this as a question. Didn't the city then say, sorry, this guy showed up at the hearing and therefore you can't complain about lack of notice? I don't think I had that much guidance from the hearing officer. If you look at the record, basically she said, I'm without jurisdiction. Go over to circuit court. Was it an administrative loss or was it lustigs? So I don't think she explained why she did what she did. Well, why didn't your client then seek administrative review within 35 days? He claims that he wasn't aware of it. Because what happened, you know, Phil Farley, who's deceased now, was not a member of Stone Street. But at one time I believe he was a member. And he lived, I think, over at 46 Superior. He had a caretaker named Keith Johnson who's not a lawyer. Well, let's give your client all the leeway in the world and say that they didn't find out about the judgment until maybe September of 99 or March of 99 or September of 11, 2011. When finally there was some point they knew about the judgment, right? 2011 is what we contend. Right. And so they didn't file until January of 12 the request for administrative review in the circuit court. So even taking that, they were well beyond 35 days, no matter what argument you can make as far as their notice and when they should have filed for administrative review. With all due respect, you know, I think the record doesn't support that. On October 18, 2001, that's when Stone Street filed a petition to vacate. Well, yeah, I'm not talking about a petition to vacate in front of the administrative office. I'm talking about going to the circuit court for administrative review. I mean, we would have been well past the 35 days. We first saw relief from administrative lodgings. We filed a motion to vacate, you know, I believe it was supported by Naft Davidson. In 01? No, in 2011. Oh, 11, okay. Brian Farley and Naft Davidson. That was filed within 20 days. And that's the subject of this case, right? Correct. Okay. Because what happened, my client claims he didn't know about it, so he received a letter from a private law firm, I think it was Talon and Talon, or a special corporation counsel. So when he found out about it, because Mr. Farley is a lawyer, Brian Farley, which he invests in Naft Davidson. If they wouldn't give him proper notice, he wouldn't have sent a caretaker over there that, you know, he's a licensed lawyer. He would have gone and did it. So I think that's where the problem lies. And I know it's not built badly. If somebody shown up there, you have a non-lawyer appearing. Yeah, I don't even think it's proper for a non-lawyer to practice law, and that was one of our claims, which we're not really asserting in this appeal. I've got another case, I think, maybe up here involving the city's unauthorized practice of law, but that's a different story. Let me change channels for a second. Are you still pursuing the slanderous title claim in front of us? Yes. Okay. How do you get around the statute of limitations in the Tort Immunity Act on that particular claim? A couple of ways. The statute of limitations, I think you have in continuing the tort, that our contention is every day that that lien is improper there. You know, it starts the statute of limitations again for it. The Tort Immunity Act, you know, we believe that there's an exception for willful and unlawful conduct, that the section the city cites involves slander and defamation. It doesn't indicate the section that they cite that involves slander or property. I think that section is more apt at the typical slander or libel based on words and not property. So you're saying it doesn't start? The tolling doesn't start until when? Until they take it off, that every day that that lien isn't properly on there, that's a continuing tort and they're liable for slander and title. All right. Counsel, on the quiet title issue, your opponent argues it's moved. Any comment on that? Yes. I think there's, you know, two exceptions that, you know, would apply. I think the first exception that is most obvious to me is a public interest exception, and I believe all the elements are there and clearly there. That what we have here, and I don't believe our clients alone in this, I think the city does run roughshod, and I believe they've filed numerous of these type of cases where they're beyond the seven years because the court dismissed it. We obviously weren't in a position to get discovery to see how many, but the requirements are that the question at issue is of a substantial public nature, which I think in this case it would be. You're talking about a person's property rights. You're talking about the city, you know, with no excuse. There's no excuse to file a judgment against a property that's over seven years without reviving it. I do believe the question is of a substantial public nature, and the second requirement is that authoritative determination is needed to guide public officials in the performance of their duties, and I think that's applicable here, that if the city is allowed to do what they do without any accountability, who's to say that they're not going to do it to my client again or to, you know, a thousand other clients? I mean, the city has, you know, thousands of administrative judgments, many of them by default. I know there are normal practices to go and file liens against property and cover people's property, and I think it's very important here. And the third requirement are the circumstances that are likely to reoccur in other cases, and I do believe that if we're able to get discovery, we can show those, but there's no reason to believe that it's not likely to occur in other cases here. And the case we cite is Belzac, F-E-L-Z-A-K versus Herbie, H-R-U-B-Y, 226 Illinois 2nd, 382. So let me switch gears a minute and ask you, I'm sorry to interrupt, but as far as the hearing was concerned, and the gentleman that appeared at the hearing that day, I can't remember his name, unfortunately, Jackson? Johnson. Johnson. Mr. Johnson, what exactly did he offer? There were photographs that were offered, is that right? The problem is I don't think we really know, because what happened the city destroyed the entire administrative record they claim that was done pursuant to whatever authority they had. Local Records Act. Right, and the problem I think you have here is the city has practiced trying to enforce these very old judgments they record, and at the same time they destroy all the administrative record to it, and it really doesn't permit anybody to come in and have meaningful review. I did do a FOIA request, and they produced very, very limited documents, and the only document I got was a copy of the final order and a copy of the appearance of Mr. Johnson, I believe, filed back in 1999. So I don't know what was presented, and the fact they destroyed it, I think nobody's going to ever know that. Thank you, counsel. Finish up, then, if you would, please, sir. Finish up. Yeah, I thank the court for their time here. I do believe the issues are important here. I think guidance is needed for the city. I think what they did was wrong here, so therefore we do request relief that's requested in our briefs, and thank you very much. Counsel, thank you for your time today. Mr. Bryan. Thank you. May it please the court. Stone Street received notice of the administrative judgment that was entered in this matter no later than March 23, 2009. That's at page 93 of the original record, not the supplemental, but the original record. Despite that, Stone Street did not attempt, did not request, filed no complaint for administrative review. Their only complaint for administrative review was filed several years later, and as Stone Street stated, when requesting that review, they said, and this is at the second supplemental record at page 506, that they request review not of the 1999 order. They say it is the motion to vacate, the decision on the motion to vacate, is this decision, not the 1999 judgment, which is the subject of count one of the complaint, and for which plan seeks administrative review. And that's repeated again on page 12 of the opening record. Let me ask you the same question I asked Mr. Linden. When I used to do this for a living, we had this statute that said that the administrative judgment was the equivalent of a court judgment, and it was intended to be a very pro-municipality law, make it easier, but then we realized we couldn't garnish bank accounts ourselves. You needed process to do that. So people put their heads together in the municipal law community and came up with this system of basically registering the administrative judgments with the circuit court and making it into a circuit court judgment, which then would be garnishable. What notice did the city provide when it filed the M1 case in 2004 to Stone Street that it was then sort of transforming or registering the original 1999 administrative judgment from 15 years earlier? My apologies. There's nothing regarding that in the record, and Stone Street has never made an issue of that, so it's never had an opportunity to develop it. Okay. Are you from, and I don't want to put you on the spot if you don't know, is there a practice, or does the city simply just file these things and gets them stamped? I'm simply not familiar. Okay. It's not within the record that was presented to me for briefing on them. Continue, counsel. But turning back to the 35 days issue, Stone Street simply did not attempt administrative review within 35 days. They waited several years. Administrative review of what? What did they wait several years, of what decision? Of the 1999 order. My apologies. Well, but they claim they were never served with notice of it. So how would you seek? You know, the city is conflating a couple things here. This is my problem with your analysis, okay? All right. This is a motion, basically a motion to quash case. That's what it is. All right. And it has a few potholes along the road, so to speak, because some guy did show up at the hearing, but he wasn't an attorney. All right. So the law is very clear that a non-attorney cannot represent a corporation, even in an administrative hearing. All right. Period. End of story. All right. So the question is, does that become a nullity? And the city is arguing that Mr. Johnson had apparent authority to represent the corporation, but that's a contract doctrine. It does not let you practice law. All right. So what their position is, is that the hearing was a nullity and everything following is a nullity. How do we get around the fact that this guy, Mr. Johnson, was not an attorney and that your administrative law judge didn't act as a traffic cop and say, Mr. Johnson, you cannot represent a corporation in my hearing room? How do we get around that? There are a few issues with that, Your Honor. First, the record does not indicate that Mr. Johnson attempted to appear as an attorney or even that he was the only individual that appeared. That is simply the only. The appearance that Mr. Johnson filed was actually at the second proceeding in this matter. There was an earlier proceeding where it was stated on the record, there was an order entered by the department that said Stone Street was saying that the, I'm paraphrasing, of course, that Stone Street was saying that the violations had been remedied and the court said the city can re-inspect the premises and then come back in September when the actual order was entered, the judgment order was entered, to present that evidence. There's nothing indicating that Mr. Johnson attempted to appear as an attorney. He appeared when the evidence was being presented. So there's some conflation of issues. But we agree he appeared, and we also can agree he's not an attorney. Yes, we would conceive that, yes. Isn't Stone Street's position that they weren't served preserved? Because we have nothing before us showing that somebody did appear in waived jurisdiction. Because Mr. Johnson was not, did not have the capacity to waive jurisdiction on behalf of the corporation, not being a licensed attorney. But it, sorry, I'll try to un- I think judges all the time in court, whether it's small claims or municipal or when I was in chancery, somebody trying to show up for a corporation, we would stop them and say, hey, are you an attorney, if they didn't introduce themselves as such. Well, I think that presumption has to apply to, presumption of regularity typically applies to circuit court judgment, administrative judgments, particularly administrative judgments, because of their, because of the procedures, there's a, you know, as this court is well aware of, there's deference to the factual findings and such. There's presumption of irregularity that to the extent that there is an allegation that there was an irregularity, that burden falls on Stone Street. It does not fall on the city to come forward and address any possible problems. I'll give you that, but they've given us, they have affidavits in the record from a bunch of people in Stone Street saying this is exactly what happened. And the city destroyed its records, which would possibly refute it. But the problem is that the affidavit by Stone Street leaves several of what we would consider pretty significant gaps in the record. Particularly, they offer no explanation whatsoever for why Johnson, let me start, let me back up a little. They offer no, they claim that they were not aware of this, but how did Johnson ever get the materials that he brought to the court? Well, it doesn't matter for a purpose of a motion to quash. Awareness does not matter. You could be perfectly well aware that you're being sued, but if you haven't been served, everything the judge does is void and null. And it happens all the time. But it's a general principle that a general appearance that does not raise these issues, that does not challenge this, if a litigant appears in court, then that, or in the department as it may be, waives any defects in service. It moves the case. But the appearance was by a non-attorney. There was an appearance by a non-attorney. There's no indication that that was the only, there's nothing to say that that was the only one. Why would we have one but not the other ones? I'm not aware, but it's unclear why certain things survived where they might have been. That's simply not part of the record before me. But the fact remains that Stone Street received notice by 2009. Stone Street knew of this judgment by 2009. And if they had concerns regarding the record, they had concerns regarding what Johnson did, regarding who was there, regarding all these different issues, they could have filed for administrative review immediately. They could have had the record developed there as we put on their brief. What decision would they be asking for administrative review of in 2009? That would have been the 1999 order. We are not claiming that they, we believe that when, if there's for some reason some delay in receiving notice of a judgment, that you gain the benefit of that delay in filing for administrative review. Let's take this outside the world of administrative hearings and go across the street to the Daily Sun. All right, I don't get served, I'm a defendant, I don't get served with a summons. I get defaulted because the judge thinks I was served or doesn't look to see if I was served, all right? And then 18 years pass and then finally the plaintiff tries to collect on the judgment after reviving it, let's say properly. All right, can't I go in and quash that? I mean, can't I ask for service and quash? I mean, it's sort of a principle. You can quash service 100 years after the judgment if there was no jurisdiction, right? Well, I believe that is correct, but I believe that is reflected in the procedures, in the ordinances adopted by the city regarding moving to vacate. In your example, the individual was defaulted. There was no appearance whatsoever. There was actually a default. And the city ordinances governing the department recognize that if an individual is defaulted, in which case I think there is an implicit recognition that the respondent, the defendant, did not have notice or has an arguable claim for lack of notice, if there is a default. But if there is not a default, then that falls away, that there is at that point the regular procedure for administer review, the 35 days after the judgment triggers. And we do not claim that this court, just to make clear, we do not claim that this court lacks jurisdiction to review the department's order striking Stone Street's motion to vacate. Just wanted to make that clear, that they filed within 35 days. But when they filed that motion to vacate, and when they claim they're seeking administer review of just the decision on the motion to vacate, that triggered a number of requirements of the statute. They cannot complain that the record was not complete in regards to the 1999 proceeding. The law is clear that when a motion to vacate or any sort of motion of that nature is filed, that's only that record. Counsel, can we talk about the record for a minute, or lack thereof? Counsel, there's nothing to know about the record. There's a suggestion that photographs were offered, or what do you know about what was in the record in this case? The record, and we cite these in our brief. I can get the citations if necessary. But it is clear that at the proceeding, at the second hearing before the department in 1999, that pictures of what appears to be a carbon monoxide detector, which one of the violations, building code violations at issue here was a lack of those. There's a picture of that, and there's also a work order signed by Phil Farley. It's not clear. There's a Phil Farley Jr. that passed away. There's a Phil Farley III. It's not clear. It just says Phil Farley. So it's unclear who it was. Both were members. Phil Farley Jr. was the manager of Stone Street Partners as late as 1998. And Philip Farley III is a member of Stone Street Partners. So someone affiliated with Stone Street was making attempts to rectify these violations before the 1999 department order was entered. And that is at least, at bare minimum, what was put in front of the department. There may have been more, but sadly, in accordance with the local records laws, those were lawfully destroyed. And just to address that point quickly, Stone Street asked this court to forbid the city from destroying any records pursuant to the local record act. There's no request for injunctive relief before this court in the first instance. None was requested in the circuit court. How do you undestroy something anyway? Sorry. How do you undestroy any? If it's been destroyed, it's been destroyed. Right. And it seems that they were arguing that the city should be forbidden in the future from destroying any records in compliance with the local records act. That request really is simply none. All right. Mr. Pryor, the municipal code sets forth how the city will serve notice of these hearings. Yes. And the municipal code itself says it goes to the registered agent, if it's a defense corporation, right? Doesn't the city have to follow its own ordinances? I would not. Or can it short circuit and just say, well, this is good enough to meet due process? But due process is constrained by the text of the ordinance, isn't it? If the ordinance says registered agent, how can you serve at the property address? Well, I believe that there's a mere violation if the ordinance was not complied with. And the record seems to indicate that it was not. But, again, it's unclear what would have been in the record in its entirety if there were additional notices sent, anything along those requirements, that if other methods are unmailing records. Go to court and get an order for special. Just mean to set those aside. If a person does not appear and file a limited appearance to challenge the validity of saying they're blasting notice out in front of my house, but they've never given me the process, I just want to say that that's invalid and I want to go home. That's a totally different case than this, because here there was an active engagement with the proceedings in front of the department. By a non-attorney? By a non-attorney. Okay. But there's no indication that he was practicing law, that he was acting as a representative in the sense that I'm going to visit. But he filed an appearance. He filed an appearance. But he did not check that he was acting as their representative. He merely filed an appearance. Is there a box to check on the form? I believe there was. Stone Street has complained that there was no, at least one point in this proceeding, Stone Street complained that there was no checkmark in those boxes on that form. There are a number of different checkboxes. I cannot remember exactly what each one says. But there are checkboxes on the form when an appearance is filed. Mr. Johnson did not claim to be the legal representative in the sense that I'm representing the city or that opposing counsel is representing Stone Street. He appeared and presented evidence. And at a second proceeding in which it is unknown what happened at the first proceeding, but an order was entered. It was stated that Stone Street was to present evidence backing up their claim that the violations had been remedied. And then Johnson appeared and the evidence was presented contemporaneously with that appearance. So Stone Street just hasn't come forward with anything. It is their burden to show that there was an irregularity below that. For instance, they claim that the city was not represented by proper counsel below. But they can't just say that. They have to come forward with evidence affirmatively showing that. They can't just say, well, we don't know, because that's where the presumption of regularity in underlying judgments triggers. And the city receives the benefit of that presumption. And counsel couldn't have brought all that before the circuit court of Cook County if they had filed within 35 days. Exactly. That is exactly correct. If they had waited 35 days, there are specific provisions in the administrative review statutes that provide that even if the record was completely destroyed by 2009, which it obviously was not their remaining portion, but if there was a problem with the status of the record, if that prevented the circuit court, and by extension this court, from conducting meaningful review, Stone Street could have said right then and there, the record is undeveloped, it's missing, it's been destroyed, and the circuit court could have remanded back to the department to conduct further hearings. I believe, according to at least part of the record, I'm not sure it's at this point in time, but when the circuit court and administrative proceedings were conducted on the motion to vacate, the judge that entered the underlying order, the 1999 order in this case, was still on the administrative law bench, according to the administrative law judge that heard the motion to vacate. So there were a lot of things that could have been done that may have short-circuited this entire case. It may have come forward there was an individual who was an attorney that appeared. There was a lot that could have been done. And all that would have taken for that to happen was for Stone Street to, when it received notice, and it's undisputed they received notice on March 23rd of 2009, at the absolute latest, they could have filed for administrative review within 35 days of that. This is where I'm having a problem, Constable. I've never heard of the doctrine of filing in the 35-day window being triggered by when you found out there was a decision 14 years earlier. I mean, I'm just not getting that point. That seems to be an equitable result of the statutory scheme, but it seems as, in our opinion, it gives the most fair protection to respondents. If for some reason there's a short circuit in the process, if the administrative law judge says, I'm going to rule by, I'm going to just issue a ruling by mail, and one never comes in, and then it's lost in the mail, if it's never, or it just wasn't sent, for some reason, if it gets sick and doesn't send it or it's not put in the mail like it's supposed to, if it was a month later, I believe it would be difficult to say that the respondent would not be entitled to that additional month plus the 35 days to, you know. I can bet you that if they had filed administrative review when they, you know, in 2000 and whatever it is, when they claimed they found out about all this, the city would have moved to dismiss it as untimely. That is not clear from the record because it did not happen. I mean, I know it's a conjecture. It's a hypothetical question. But it would seem that that would be a tough road to hoe by the city to say that the first notice ever received, there might be issues with a sort of Latches-esque doctrine that you know there is a judgment pending and waiting a decade before saying I never got the order. There might be some concerns there. But it seems like it's most consistent with the statute and most protective of rights of the individuals. And even given that, though, even given that generous protection, Stone Street didn't do that. They didn't file within 35 days. That's the most generous possible reading, I believe, of the 35-day limitation is that March 23, 2009, that they had formal notice as required by the relevant ordinances and statutes. And they still didn't do anything. They waited nearly two years, approximately two years, and filed a motion to vacate. But the statutory scheme in the Administrative Review Law… But what they did is they filed a motion, basically a motion to quash. Correct. Right? Which can be filed at any time. It doesn't have to get filed. Correct. Correct. And that triggers certain requirements. It does not affect, you know, we discussed in our brief the anytime requirements of the Administrative Review Law that it sets aside the underlying record, for instance, that it won't affect finality. It does not bring up the underlying record, in this case of the 1999 order, but it will always be of the underlying administrative order. It does not bring that up on appeal. It merely preserves what was put in front of the department on the motion to quash, motion to vacate, however it's termed. But that's a serious problem for Stone Street here because they're complaining about a lack of record that the Administrative Review Law did not entitle them to even have on the sort of administrative review they sought here, of the judicial review they sought here. So I think that we believe that poses serious problems for their entire argument, that they chose a path that limited their record. They can't complain that the law gave them exactly what they were entitled to under the law just because it happened to be less than they wanted. The law said what it said and that they were only entitled to a certain amount of record. Thank you. Any further questions? Thank you, sir. Do you wish to reply? Thank you. If I can, I'd just like to address a couple of points unless the Court's got any questions. One is, I think Rana brought up a very good point we argued below about unauthorized practice of law. It seems like the city wants it both ways in this case. I mean, they're saying at one end, they're saying, well, Stone Street got notice and they appeared through a non-attorney, Keith Johnson. Then I hear counsel getting up here and saying, well, it doesn't indicate on the appearance who he appeared for. So I guess the question is, you can't have it both ways. Either Mr. Johnson appeared as a non-lawyer, which is unauthorized practice of law on behalf of, in essence, what a corporation is, a limited liability company, or they didn't. And counsel at the same time is saying that apparently it's not clear what happened at that hearing. But then, Mr. Linden, you know, there's a case we haven't talked about yet this morning, which is downtown disposal services, which chips away a little bit at that whole doctrine. A little bit. I don't think it really chips away at the fundamental requirement. What it says, if I recall, that it's not a per se rule. That's a nullity that you have to look at the circumstances. Wasn't that a recently nominated Supreme Court case? It's about a year old. If you look at the rationale and what constitutes unauthorized practice law, I don't think the Supreme Court did anything to change it. Basically, the Supreme Court said, well, the complaint is invalid because it was filed by a non-attorney. But it could be amended and stay within the statute of limitations, I suppose. It's a four to three decision. It's a closed case. But it seems to chip away at the nullity doctrine. I think it says void bull. Right. I think it says on a case-by-case basis it's not a per se rule. Right. That you have to look at it. Yes. But here, because that issue is never here, the court never addressed whether or not it should be void. Because in a lot of cases, I think downtown disposal stands for the proposition. I think general rules, it should be null and void, but not automatic, if I recall that ruling here. But then counsel says that photographs were introduced. And at the same time as saying Keith Johnson didn't engage in the practice of law, then who produced these photographs? Isn't that the practice of law? How do we know from the record that we have that photographs were introduced? We don't have the photographs, do we? I have no idea. The city attached, somehow they found photographs. There's a notation on a handbook. I have no idea what was introduced. And I think the city's destruction of the record makes it impossible. And then counsel says, well, in 2009, we should have filed a complaint for administrative review or to vacate that. And it's not uncontested that we found out about it in 2009. Brian Farley submitted an affidavit saying the first time he found out about it was in 2011. I think counsel's referring to some affidavit that a lawyer named Talon submitted that he never testified at the hearing. There's no indication that anything was ever received in 2009. But I think Your Honor hit it right on the nose. You think the city wouldn't have objected if we came in 10 years later than in 2009 and filed the motion to vacate? I mean, it's kind of preposterous. After they destroy the entire record and they're saying, well, we should have filed, the result would have been the same in 2009. One thing I really take issue with the city, too, is their arbitrary classification of a default judgment. The code doesn't really define what default judgment is. And we submit in our brief, and I think in this case, I think it is a default judgment, that apparently somebody appeared. We don't know because the record was destroyed who Mr. Johnson appeared for, but let's assume he purported to appear for Stone Street. He was not an authorized representative of Stone Street. We have an unrebutted affidavit from that. Brian Farley testified that he had no authorization to be there. Phil Farley was not. He's deceased now, and so is Mr. Johnson. So part of it, we'll never know what really occurred because both these two individuals are dead. Was Mr. Farley adjudicated as disabled at that time? I don't know if he was. At that time, I think he had a heart attack and stroke. I don't think technically. People are presumed to be competent unless adjudicated disabled, are they not? Right, but there's no indication that he had anything to do at that point in Stone Street. We have an affidavit saying he was not a manager of Stone Street. And it's like a family business. A dad had a stroke and has passed away, and the kids were managing it. So he was not a member. And maybe Keith Johnson just saw the mail and went over there as a non-employer. It helps that he didn't destroy the records here. Okay, finish up, counsel. Okay, thank you. I'm done unless the court has any other questions I'd be happy to answer. All right. But thank you very much. Gentlemen, thank you very much for the argument you offered before this court today, and you will be hearing from us. Thank you.